ORDERED.

**Dated:  August 03, 2023**

Catherine M. Ewen

Catherine Peek McEwen
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                    Case No. 8:21-bk-05810-CPM
                                                          Chapter 11
Eagleford Recycling Services, LLC,

        Debtor.
_____/

### MEMORANDUM OPINION ON
### PREJUDGMENT INTEREST RATE

In determining whether there is a triable issue concerning the applicable

interest rate for a claim in this case, the Court must predict how the Texas Supreme

Court would interpret Texas statutory law on construction payment disputes. Under

the Texas Prompt Payment Act ("TPP Act"), which generally incentivizes owners to

promptly pay contractors for properly performed work, "unpaid amount[s] *required*

under the Act" accrue prejudgment interest at 18 percent per annum.[1] The ultimate

---

[1] Tex. Prop. Code § 28.004 (2015) (emphasis added).

question for the Court in the present case is *when* an unpaid amount is required, so as to accrue interest at the 18 percent rate.

In this case, PetroSwift, LLC has filed a $428,503.93 proof of claim arising out of a Texas state court "Agreed Judgment." One, by the way, that was not agreed to by the Debtor, as the judgment deals only with liability to PetroSwift by another party to the same action. The judgment is for amounts due on a construction contract. In its proof of claim, PetroSwift seeks prejudgment interest at 18 percent under the TPP Act and as included in its final judgment. The Debtor has objected because it says the TPP Act does not subject to interest accrual at 18 percent amounts withheld because of a good-faith dispute. PetroSwift now asks the Court to determine that it is entitled to prejudgment interest at 18 percent under the Act as a matter of law.[2]

At this point, you may be wondering how this Court has authority to review a state court judgment. The Court wondered similarly, as it must.[3] After all, doesn't the *Rooker-Feldman* doctrine bar federal courts from reviewing state court judgments?[4] The Eleventh Circuit has made clear that *Rooker-Feldman* applies only if the state

---

[2] Doc. No. 132.

[3] *Am. Civil Liberties Union of Fla., Inc. v. Dixie County, Fla.*, 690 F.3d 1244, 1249 (11th Cir. 2012) (quoting *Hallandale Prof's Fire Fighters Local 2238 v. City of Hallandale*, 922 756, 759 (11th Cir. 1991)).

[4] *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021) ("To whatever extent we have not been clear enough before, we aim to be now. *Rooker-Feldman* means that federal district courts cannot review or reject state court judgments rendered before the district court litigation began.").

court proceeding has ended before the federal court proceeding began.[5] Here, the

state court proceeding has not ended. Under Texas law, a final judgment is "final"

for appellate purposes only if it actually disposes of *all parties* and *all claims* in the

proceeding or expressly states that it disposes of *all parties* and *all claims* even if it does

not actually do so.[6] The agreed final judgment here does not dispose of *all claims*

between *all parties* (nor does it say it does). Indeed, PetroSwift concedes that it has

unadjudicated fraudulent transfer claims pending in the Texas state court

proceeding.[7]

Because the Texas state court proceeding has not ended, *Rooker-Feldman* does

not apply. And of course, given that *Rooker-Feldman* is no bar to the exercise of

jurisdiction over this dispute, the resolution of an objection to a proof of claim is well

within the Court's jurisdiction over bankruptcy cases and disputes arising under the

Bankruptcy Code.[8] Thus, this Court may consider whether PetroSwift is entitled to

prejudgment interest at 18 percent under the TPP Act.

---

[5] *Id.* (explaining that *Rooker-Feldman* "bars only 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments'") (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005))

[6] *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195, 200 (Tex. 2001), *superseded by statute on other grounds as recognized by Indus. Specialists, LLC v. Blanchard Refin. Co.*, 652 S.W.3d 11, 14 –15 (Tex. 2022).

[7] Doc. No. 132, p. 17 ("The only unadjudicated relief in the Texas Action were [. . .] the fraudulent transfer claims.")

[8] 28 U.S.C. § 1334(b); 28 U.S.C. § 157(b)(2)(B).

Sections 28.002 and 28.003 of the TPP Act create an exception to the general rule that owners must promptly pay contractors: owners are entitled to withhold from payment any amount that is subject to a good-faith dispute. Because an amount that is subject to a good-faith dispute is not required to be paid under the TPP Act, it is not yet due and thus does not accrue prejudgment interest at 18 percent — even if it is later found to be owing to the contractor. PetroSwift has failed to demonstrate as a matter of law that the amount owed on its final judgment was not the subject of a good-faith dispute. Therefore, the Court cannot determine that PetroSwift is entitled to prejudgment interest at 18 percent as a matter of law.

## I.    Background

Sometime before April 2015, Dewitt Recyclable Products ("DRP") was permitted by the Railroad Commission of Texas to operate an oilfield waste disposal facility.[9] In April 2015, DRP contracted with PetroSwift to construct the facility on property it owned in Cuero, Texas.[10] Between June 2015 and February 2016, PetroSwift invoiced DRP a total of $783,754.06 for its work on the project.[11] DRP paid the invoiced amount in full. But, according to DRP, as the project was nearing completion in late spring or early summer 2016, PetroSwift walked off the job.[12]

---

[9] Doc. No. 130-4, p. 3 at ¶ 5.

[10] *Id.* p. 3 at ¶¶ 4 – 6.

[11] Doc. No. 130-3, Ex. B.

[12] Doc. No. 130-4, ¶ 6; *Aff. of David Elks*, Doc. No. 135, ¶¶ 2 – 8; *Decl. of Stephanie Kleinecke*, Doc. No. 135, ¶¶ 2 – 9.

DRP also believed there was an issue with some of PetroSwift's work.[13] So DRP refused to pay the final three invoices, which totaled $205,444.39.[14]

When DRP refused to pay, PetroSwift recorded a mechanic's and materialmen's lien against the property and later sued DRP in Texas state court to foreclose the mechanic's lien and recover damages for breach of contract and open account.[15] DRP counterclaimed for breach of contract and breach of the Texas Deceptive Trade Practices Act.[16]

While the action was pending, the property was transferred three times — first to Jim Wright and then to Cuero Land Management, LLC, then ultimately to the Debtor.[17] Both Cuero Land Management and the Debtor intervened in the lien foreclosure action and asserted claims against PetroSwift.[18] Those claims were largely predicated on the same allegations: PetroSwift built the main waste-receiving pit using only half as much rebar as provided for in the engineering drawings; and PetroSwift failed to adequately wet and vibrate the concrete, causing damages to the waste receiving pit.[19] Ultimately, the Texas state court disposed of Cuero Land

---

[13] *Decl. of Stephanie Kleinecke*, Doc. No. 135, ¶¶ 2 – 9.

[14] *Id.* ¶¶ 2 – 9; Doc. No. 130-3, Ex. B.

[15] Doc. Nos. 130-2 & 130-3.

[16] Doc. No. 130-4.

[17] Doc. No. 130-3, ¶¶ 20 – 33.

[18] Doc. Nos. 130-9, 130-10, 130-13 & 130-14.

[19] Doc. No. 130-13, ¶¶ 3 – 7 & 21; Doc. No. 130-14, ¶¶ 4 – 6.

Management's and the Debtor's claims on summary judgment or on motions to strike.[20]

PetroSwift and DRP then agreed to entry of final judgment in PetroSwift's favor on PetroSwift's claims against DRP. On October 6, 2021, the Texas state court entered an agreed final judgment in PetroSwift's favor and against DRP in the principal amount of $205,444.39, plus $108,142 in attorney's fees, as well as prejudgment interest at 18 percent under Texas Property Code Chapter 28.

One month later, the Debtor filed for chapter 11 bankruptcy.[21] PetroSwift has filed a $428,503.93 proof of claim in the case comprising $205,444.39 in principal, $108,142 in attorney's fees awarded under the final judgment, and $114,917 in additional attorney's fees and costs incurred since entry of the final judgment.[22] PetroSwift's proof of claim also seeks prejudgment interest at 18 percent as stated in the final judgment.[23]

---

[20] Doc. Nos. 130-11, 130-12 & 130-16.

[21] Doc. No. 1.

[22] Claim No. 3-2.

[23] *Id.*

The Debtor objected to PetroSwift's proof of claim.[24] Among other grounds, the Debtor argued that PetroSwift failed to cite any support for its claim to prejudgment interest at 18 percent per annum.[25]

PetroSwift moved for summary judgment on the Debtor's claim objection.[26] With respect to prejudgment interest, PetroSwift contends that interest accrues on the judgment amount at 18 percent under the TPP Act.[27] According to PetroSwift, the TPP Act mandates that an owner must pay a contractor within 35 days of a written request for payment.[28] And any unpaid amount required under the TPP Act accrues interest at the rate of 1½ percent per month (or 18 percent annually).[29] Thus, PetroSwift contends that 18 percent is the applicable prejudgment interest rate as a matter of law.

In response, the Debtor argues that the obligation to pay 18 percent interest does not apply when there is a good-faith dispute over the amount owed under a contract, including a good-faith dispute over whether the contractor properly

---

[24] Doc. No. 47.

[25] *Id.* ¶ 8 ("In the Attachment to its Claim, PetroSwift appears to also assert 'pre-judgment interest' at 18% and 'post-judgment interest' at 5%, but there are no itemized statements concerning any claimed interest. Moreover, there is no reference to any agreement or State statute that would support interest owed by the Debtor.").

[26] Doc. No. 132.

[27] *Id.* at 13 – 14.

[28] *Id.* at 13 (citing Tex. Prop. Code § 28.002(a)).

[29] *Id.* (citing Tex. Prop. Code § 28.004(a)).

performed its work.[30] Here, the Debtor argues there was a good-faith dispute over PetroSwift's work on the project, as evidenced by the fact that DRP denied the allegations of PetroSwift's complaint and asserted a counterclaim for damages in the Texas state court litigation, which the parties litigated for five years before settling their dispute.[31] The Debtor contends, therefore, the existence of a good-faith dispute precludes prejudgment interest at 18 percent as a matter of law.

PetroSwift does not dispute that DRP had the right to withhold payment under the TPP Act if there had been a good-faith dispute over its work.[32] But, according to PetroSwift, "it would clearly not be sufficient evidence [for the Debtor] to support the existence of a good faith dispute to merely refer to the docket in the Texas Action."[33] What's more, PetroSwift points out that all PetroSwift's claims against DRP were resolved in PetroSwift's favor by the agreed judgment.[34] So PetroSwift denies the existence of a good-faith dispute. And, in any event, PetroSwift contends the TPP Act does not exempt the withheld amount from prejudgment interest at 18 percent — even if withheld because of a good-faith dispute — if the withheld amount is ultimately found to be owed to PetroSwift. So PetroSwift

---

[30] Doc. No. 134 at 5 – 6.

[31] *Id.*

[32] Doc. No. 132 at 13 – 14.

[33] Doc. No. 137 at 3.

[34] *Id.*

contends that this Court should determine that the applicable prejudgment interest rate is always 18 percent, regardless of the existence of a good-faith dispute.

## II.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure governs the parties' cross motions for summary judgment.[35] Under Rule 56(a), summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[36] In reviewing a motion for summary judgment, this Court must review the record and all its inferences in the light most favorable to the nonmoving party.[37]

Because the parties filed cross motions for summary judgment, this Court must review each motion separately under the Rule 56(a) standard.[38] And in doing so, the standard is the same: each moving party must show that there are no genuine disputes as to any material fact that would preclude judgment as a matter of law.[39] "The filing of cross motion[s] does, however, 'authorize the court to assume that

---

[35] Federal Rule of Bankruptcy Procedure 7056 provides that Federal Rule of Civil Procedure 56(a) applies in this proceeding.

[36] Fed. R. Civ. P. 56(a).

[37] *Martinez v. Hutton (In re Harwell)*, 628 F.3d 1312, 1316 – 17 (11th Cir. 2010) (citing *Loren v. Sasser*, 309 F.3d 1296, 1301 – 02 (11th Cir. 2002)).

[38] *LSQ Funding Grp., L.C. v. EDS Field Servs.*, 879 F. Supp. 2d 1320, 1325 (M.D. Fla. 2012).

[39] *Cooper v. Jefferson Cnty. Coroner & Med. Exam'r*, 861 F. App'x 753, 755 (11th Cir. 2021).

there is no evidence which needs to be considered other than that which has been filed by the parties.'"[40]

## III.    Conclusions of Law

As a threshold matter, the Court concludes there is a genuine issue of material fact on whether the amount withheld under the contract between DRP and PetroSwift was subject to a good-faith dispute. In opposition to PetroSwift's summary judgment motion, the Debtor filed an affidavit from David Elks and a declaration from Stephanie Kleinecke.[41] Elks, who was a member of DRP, attested in his affidavit that certain invoices submitted by PetroSwift were "for work that was either not performed or was performed in a substandard fashion so that it had to be redone at substantial costs to [DRP]."[42] Kleinecke, a DRP employee who "was at the job site virtually every day," attested in her declaration that:

- PetroSwift stopped working on the site in late April 2016;

- at the time PetroSwift stopped working, its work "was not complete and was deficient in many respects";

- compaction testing was required to obtain a final permit for the facility, but she "became aware that Petroswift had not performed compaction testing";

---

[40] *Van Arsdale v. IRS (In re Van Arsdale)*, 2017 WL 2267021, at *2 (Bankr. N.D. Cal. May 22, 2017) (quoting *Greer v. United States*, 207 F.3d 322, 326 (6th Cir. 2000)).

[41] Doc. No. 135.

[42] *Elks Aff.*, Doc. No. 135, ¶ 4.

- "[t]here was also an in issue relating to backfilling and compacting around the concrete receiving pits, in front of the wash racks, and the scale aprons," which "was never corrected by Petroswift";

- "[t]here was also an issue relating to the amount of rebar used in the concrete for the receiving pits," and "DRP ultimately confirmed that Petroswift did not install the correct amount of rebar pursuant to the structural engineering for the project";

- "despite being provided with a punch list for the job, Petroswift refused to complete the punch list items";

- "Petroswift was given every opportunity to complete the work and correct their deficiencies but failed and refused to do so";

- she "participated in a walk-through inspection of the job site with Petroswift in hopes of resolving the open issues and getting Petroswift back on the job to finish up and correct deficiencies," but "[u]nfortunately, the walk-through was a complete waste of time as Petroswift refused to acknowledge any responsibility for the outstanding issues" and

- "[a]s a result of Petroswift's failures, DRP was required to finish the job on its own."[43]

It is true, as PetroSwift points out, that DRP stipulated to an agreed final judgment in the Texas state court action. But, on the one hand, the mere fact that DRP and PetroSwift settled their dispute does not negate the existence of a good faith dispute — much less as a matter of law. On the other hand, the fact that DRP stipulated to the judgment, coupled with the fact that the Texas state court ruled

---

[43] *Kleinecke Decl.*, Doc. No. 135, ¶¶ 2 – 9.

against the Debtor on its claims, which appear to have overlapped (at least to some extent) DRP's claims, precludes the Debtor from establishing the existence of a good-faith dispute as a matter of law. Thus, the Court concludes that neither party met its burden of demonstrating that there is no genuine issue of material fact as to whether the amount withheld under the contract between DRP and PetroSwift was subject to a good-faith dispute.

Because there is a genuine issue of material fact on the good-faith dispute issue, PetroSwift is entitled to prejudgment interest at 18 percent as a matter of law only if amounts withheld under the TPP Act because of a good-faith dispute are not exempt from the TPP Act's 18 percent interest rate. That issue is one of state law.

When faced with an issue of state law, this Court's task is simple — at least in concept: this Court must resolve the issue the way the Texas Supreme Court would.[44] For that reason, to resolve the interest rate issue before it, this Court must "look first to the decisions of the Supreme Court of Texas."[45] And because the Texas Supreme Court has not ruled on the issue, this Court must predict what the Texas Supreme Court would do if faced with the same facts.[46]

---

[44] *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017) ("When deciding whether to apply a state-law immunity, we are 'bound to answer the question the way the state's highest court would resolve the issue.'") (quoting *Troice v. Proskauer Rose, LLP*, 816 F.3d 341, 345 (5th Cir. 2016)).

[45] *Troice v. Greenberg Traurig, LLP*, 921 F.3d 501, 505 (5th Cir. 2019).

[46] *Kelly*, 868 F.3d at 374 ("If the Texas Supreme Court has not ruled on an issue, we 'make an *Erie* guess, predicting what [the Texas Supreme Court] would do if faced with the [same] facts.'"); *Troice*, 921 F.3d at 505.

To make that prediction, this Court should look to decisions by Texas intermediate appellate courts. A handful of Texas intermediate appellate court have observed that "while section 28.003 [of the TPP Act] allows a party to withhold prompt payment in the event of a good faith dispute, it does not exempt this withheld amount from accruing interest if the withholding party is ultimately found to be at fault for the breach."[47]

One of those decisions is *Landmark Organization, LP v. Delphini Construction Co.*, which PetroSwift relies on.[48] In that case, Landmark, a general contractor on a military housing project, subcontracted with Delphini for work on the roof, gutters, and downspouts.[49] Dissatisfied with Delphini's work, Landmark terminated the contract.[50] Delphini sued for breach of contract, and after a jury found in Delphini's favor, the state court awarded Delphini damages, attorney's fees, and prejudgment

---

[47] *Landmark Org., LP v. Delphini Constr. Co.*, 2005 WL 2560022 (Tex. Ct. App. Oct. 13, 2005); *Patel v. Creation Constr., Inc.*, 2013 WL 1277874, at *3 (Tex. Ct. App. Feb. 27, 2013) (explaining that "while section 28.003 [of the TPP Act] allows a party to withhold prompt payment in the event of a good faith dispute, it does not exempt this withheld amount from accruing interest if the withholding party is ultimately found to be at fault for the breach") (quoting *Landmark*, 2005 WL 2560022, at *5); *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 726 (Tex. Ct. App. 2017) (explaining that "section 28.003(b) allows the party disputing the payment to withhold from the payment no more than the amount in dispute, but it does not exempt the withheld amount from accruing interest if it is ultimately determined that the amount requested is owed"); *West Texas Landscape, Inc. v. Meneses*, 2021 WL 4201602 (Tex. Ct. App. Sept. 16, 2021) (recognizing that "*Patel*, which cites *Landmark*, states that 'while section 28.003 allows a party to withhold prompt payment in the event of a good faith dispute, it does not exempt this withheld amount from accruing interest if the withholding party is ultimately found to be at fault for the breach'").

[48] Doc. No. 132 (citing *Landmark*, 2005 WL 2560022, at *5).

[49] *Id.* at *1.

[50] *Id.*

interest at 12 percent interest.[51] On appeal, Landmark challenged the award of prejudgment interest.

Because Delphini's final judgment was for breach of contract, the *Landmark* court held that an award of prejudgment interest was governed by common law — not the TPP Act or other statutes.[52] Then, concluding it was not bound by the prejudgment interest rate provided for in the TPP Act and other statutes, the court held that it could look to the parties' contract, as well as general equitable principles, to determine the appropriate interest rate.[53] Because the parties' contract provided that Delphini would be required to pay 12 percent interest if it breached the contract, the *Landmark* court took what can be described as a "what's good for the goose is good for the gander" approach and held that the trial court did not err in awarding Delphini prejudgment interest at the same rate, 12 percent.[54] In affirming the prejudgment interest award, the court rejected Landmark's argument that it was not required to pay prejudgment interest on the damages award because there was a good-faith dispute between the parties regarding Delphini's performance:

> Landmark also argues at the time of the suit that there was a "good faith dispute" between the parties regarding whether Delphini had properly performed its duties under

---

[51] *Id.*

[52] *Id.* at *3. The *Landmark* court was criticized for its decision to eschew the Prompt Payment Act. *Village Contractors, Inc. v. Trading Fair IV, Inc.*, 2011 WL 2693386, at *8 n.29 (S.D. Tex. July 11, 2011).

[53] *Id.*

[54] *Id.* at *4.

> the contract, and a good faith dispute will toll the
> obligation of any party to pay the amounts owed. We do
> not disagree that the parties disputed whether Delphini
> had adequately performed in full under its subcontract,
> and that therefore Landmark could choose to rely on
> section 28.003 [of the Prompt Payment Act] in
> withholding the amount disputed. However, while section
> 28.003 allows a party to withhold prompt payment in the
> event of a good faith dispute, it does not exempt this
> withheld amount from accruing interest if the withholding
> party is ultimately found to be at fault for the breach.[55]

This Court is not bound by *Landmark* or the other intermediate appellate court decisions, discussed below, holding that the TPP Act does not exempt from prejudgment interest accrual at 18 percent funds that are withheld because of a good-faith dispute. Decisions by Texas intermediate appellate courts are not binding on this Court if there is a compelling reason to believe the Texas Supreme Court would decline to follow the reasoning of those decisions:

> In our evaluation, "we typically 'treat state intermediate
> courts' decisions as the strongest indicator of what a state
> supreme court would do, absent a compelling reason to
> believe that the state supreme court would reject the lower
> courts' reasoning.'"[56]

I conclude that the Texas Supreme Court would decline to follow the reasoning of the intermediate appellate courts for the following reasons.

---

[55] *Id.* at *5 (citations omitted).

[56] *Troice v. Greenberg Traurig, LLP*, 921 F.3d 501, 505 (5th Cir. 2019) (quoting *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017)).

A.    **The intermediate appellate court decisions are built on shaky underpinnings.**

None of the Texas intermediate appellate court decisions examines the TPP Act's language. The genealogy of their development is necessary to realize how a foundational shortcoming in the progenitor was perpetuated in its successors. *Landmark* relies on *TA Operating Corp. v. Solar Applications Engineering, Inc.* for the proposition that a court must award prejudgment interest on the entire amount found to be due to a contractor even if the owner raises a good-faith dispute over the amount due.[57] Then, *Patel v. Creation Construction, Inc.*, relies on *Landmark*.[58] And thereafter *Vast Construction, LLC v. CTC Contractors, LLC*, in turn, relies on *Patel*.[59] In other words, *TA Operating Corp.* begat *Landmark*; *Landmark* begat *Patel*; *Patel* begat *Vast*.

But here is the problem: there was no good-faith dispute in *TA Operating Corp.*[60] There, TA Operating Corp. contracted with Solar Applications Engineering to construct a multi-use truck stop.[61] Despite a rocky start, the project was

---

[57] *Landmark*, 2005 WL 2560022, at *5 (citing *TA Operating. Corp. v. Solar Applications Eng'g, Inc.*, 2005 Tex. App. LEXIS 2350, at *25 (Tex. Ct. App. 2005)).

[58] *Patel v. Creation Constr., Inc.*, 2013 WL 1277874, at *3 (Tex. Ct. App. Feb. 27, 2013) (relying on *Landmark*)

[59] *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 726 (Tex. Ct. App. 2017) (relying on *Patel*).

[60] *TA Operating. Corp. v. Solar Applications Eng'g, Inc.*, 2005 Tex. App. LEXIS 2350, at *25 (Tex. Ct. App. 2005).

[61] *Id.* *2.

substantially completed in August 2000. Upon substantial completion, TA Operating Corp. sent Solar a punch list of 28 items that needed to be completed.[62] TA Operating Corp. later added more than 300 items to the punch list, several of which Solar objected to.[63] Eventually, TA Operating Corp. terminated the contract "for cause."[64] Although Solar disputed that termination was "for cause," it conceded that two punch-list items had not been completed, accepted the termination, and submitted a final payment application in the amount of $472,148.77.[65]

Claiming there was still work left on the contract, TA Operating Corp. withheld final payment.[66] Solar sued TA Operating Corp., which counterclaimed for delay damages and the cost of repairing defective work.[67] After a jury found in Solar's favor that Solar was entitled to $400,000 in damages (taking into account an $8,000 offset for remedial defects), the trial court awarded Solar damages, plus prejudgment interest under the Prompt Payment Act.

TA Operating Corp. challenged the prejudgment interest award.[68] According to TA Operating Corp., "the jury's finding of an $8,000 offset for remedial defects

---

[62] *Id.* at *3 – 4.

[63] *Id.* at *4.

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.* at *23 – 24.

conclusively established that there was a good faith dispute regarding the amount owed for properly performed work."[69] Because the jury awarded Solar $400,000 in damages, the court held that an $8,000 offset was not sufficient to trigger section 28.003's good-faith dispute exception:

> TA argues that even if the evidence does support the application of the Prompt Payment Act, the good faith exception applies, excusing its withholding of the entire amount of payment. . . . TA argues that the jury's finding of an $ 8,000 offset for remediable defects conclusively establishes that there was a good faith dispute regarding the amount owed for properly performed work. . . . Given that the jury found $ 400,000 was owed in consideration on the contract, and only $ 8,000 was found as an offset for remediable defects, TA's argument that it could withhold payment of the entire amount owed (i.e. that the entire $ 400,000 worth of work was improperly performed) was not in good faith, and does not fall within the exception.[70]

So the court in *TA Operating* — the progenitor of the intermediate appellate court decisions holding that prejudgment interest under the TPP Act is due on withheld funds — never actually held that amounts withheld under the TPP Act because of a good-faith dispute are still subject to prejudgment interest.[71]

---

[69] *Id.* at *25.

[70] *Id.* at * 24 – 25.

[71] *Id.*

**B.**     **The intermediate appellate court decisions contradict the TPP Act's plain language.**

When interpreting a Texas statute, courts must first "look to the plain language, construing the text in light of the statute as a whole."[72] In doing so, courts must give statutory terms their "common, ordinary meaning, unless the text provides a different meaning or the common meaning leads to an absurd result."[73] "If the statute's plain language is unambiguous, we interpret its plain meaning, presuming that the Legislature intended for each of the statute's words to have a purpose and that the Legislature purposefully omitted words it did not include."[74] Here, the plain language of the TPP Act — when interpreted as a whole and given its plain meaning — does not subject to prejudgment interest amounts that are legitimately withheld under the good-faith dispute exception.

Start with section 28.002 of the TPP Act. That section, generally speaking, requires an owner to pay a contractor *for properly performed work* within 35 days of receiving the contractor's invoice:

> If an owner or a person authorized to act on behalf of the owner receives a written payment request from a contractor for an amount that is allowed to the contractor under the contract for *properly performed work* or suitably stored or specially fabricated materials, the owner shall pay the amount to the contractor, *less any amount withheld*

---

[72] *See, e.g., Miles v. Tex. Cent. R.R. & Infrastructure, Inc.*, 647 S.W.3d 613, 619 (Tex. 2022) (citing *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019)).

[73] *Miles*, 647 S.W.3d at 619 (quoting *Silguero*, 579 S.W.3d at 59).

[74] *Id.* (quoting *Silguero*, 579 S.W.3d at 59).

> *as authorized by statute*, not later than the 35th day after the
> date the owner receives the request.[75]

But, as alluded to in the plain language of section 28.002 ("less any amount withheld as authorized by statute"), there is an exception. So we next turn to that exception, section 28.003, under which an owner can withhold payment if there is a good-faith dispute concerning the amount due:

> If a good faith dispute exists concerning the amount owed for a payment requested or required by this chapter under a contract for construction of or improvements to real property, . . . the owner, contractor, or subcontractor that is disputing its obligation to pay or the amount of payment may withhold from the payment owed not more than 100 percent of the difference between the amount the obligee claims is due and the amount the obligor claims is due.[76]

Section 28.003 makes clear that a good-faith dispute concerning the amount owed includes a "dispute regarding whether the work was performed in a proper manner."[77]

Hence, reading sections 28.002 and 28.003 together — as one is compelled to do under another principle of statutory construction, viz., construing them *in pari materia* — an owner must, within 35 days of an invoice, pay a contractor the amount due on an invoice within 35 days, less any amounts attributable to a good-faith dispute over the work perform.

---

[75] Tex. Prop. Code § 28.002 (2015) (emphasis added).

[76] *Id.* § 28.003(b).

[77] *Id.*

Two other provisions of the TPP Act, sections 28.004 and 28.009, incentivize compliance with section 28.002's prompt payment mandate. First, section 28.009 allows a contractor to walk off the job if the owner fails to pay the "undisputed amount" within 35 days: "If an owner fails to pay the contractor the undisputed amount within the time limits provided by this chapter, the contractor or any subcontractor may suspend contractually required performance the 10th day after the date the contractor or subcontractor gives the owner and the owner's lender written notice . . . ." Second, section 28.004 — the section at issue here — imposes a punitive 18 percent interest rate on all "unpaid amount[s] required under this chapter" beginning the day after "the payment becomes due":

> (a)　An *unpaid amount required under this chapter* begins to accrue interest on the day after the date on which the *payment becomes due*.
>
> (b)　An *unpaid amount* bears interest at the rate of 1 ½ percent each month.[78]

So, under section 28.004, only "unpaid amounts required under [chapter 28]" accrue prejudgment interest at 18 percent.[79]

What amounts are *required under chapter 28*? Sections 28.002 and 28.003 answer that question: all amounts due for properly performed work, less any amount withheld because of a good-faith dispute over the contractor's performance. Thus,

---

[78] *Id.* § 28.004(a) – (b) (emphasis added).

[79] *Id.*

under the plain language of section 28.004, amounts withheld because of a good-faith dispute over a contractor's performance are not subject to prejudgment interest at 18 percent because they are not required to be paid under the TPP Act.

### C. The Texas Legislature did not intend to subject amounts withheld because of a good-faith dispute over work performed to 18 percent interest.

The Texas Supreme Court has cautioned courts against resorting to legislative history or extrinsic aids to interpret unambiguous statutes, and that is because the "statute's plain language most reliably reveals the legislature's intent."[80] Because this Court has concluded the TPP Act plainly exempts amounts withheld because of a good-faith dispute over a contractor's performance from prejudgment interest at 18 percent, there is no need to resort to legislative history. But even if the Prompt Payment Act were ambiguous, and the Court did have to resort to legislative history, the outcome would be the same.

The TPP Act dates back more than two decades. In the late 1990s, contractors, subcontractors, and construction suppliers in Texas frequently complained about not getting paid on construction projects.[81] More often than not, nonpayment had nothing to do with defective or incomplete work.[82] Instead,

---

[80] *Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 135 (Tex. 2018).

[81] Texas Office of House Bill Analysis, 76th Leg., H.B. 1522, Mar. 27, 1999 ("Contractors, subcontractors, and suppliers of construction companies often complain that they have not been paid for work already performed.").

[82] *Id.* ("Typically, the reason for nonpayment is not defective or incomplete work. Rather, it is due to the general contractor not receiving payment from the owner.").

22

nonpayment often resulted from owners not paying general contractors, who, in turn, failed to pay their subcontractors.[83] The problem, of course, is that contractors and subcontractors were still required to pay for labor and materials even though they had not been paid, which forced contractors and subcontractors to borrow money to pay their workers and suppliers.[84] To remedy that problem, and increase cash flow on construction projects, the Texas legislature passed the TPP Act.[85]

The Prompt Payment Act incentivizes owners to promptly pay contractors by subjecting unpaid amounts for properly performed work to a substantial (18 percent) interest rate. There is no indication in the legislative history that the Legislature intended to punish owners who withheld payment because of a good-faith dispute over the work performed by subjecting those funds to the same hefty interest rate. To the contrary, as the court recognized in *Arco Construction Co. v. American Services Co.*, the purpose of the TPP Act was "not only to ensure that contractors and subcontractors are promptly paid for valuable services and materials provided, but

---

[83] *Id.* ("Typically, the reason for nonpayment is not defective or incomplete work. Rather, it is due to the general contractor not receiving payment from the owner.").

[84] *Id.* ("[I]n the event that payment is not received, the subcontractors, who may be responsible for more than 80 percent of the work, are still required to pay for labor and materials even if payment has not been received from the general contractor, which can force the subcontractor to borrow from a lender in order to pay workers and suppliers.").

[85] *Id.* ("C.S.H.B. 1522 [the Prompt Payment Act] seeks to increase the cash flow on construction projects by requiring monthly billings and authorizes contractors or subcontractors to withhold work performance if they have not yet been paid 10 days after notifying the owner or contractor of such.").

also to allow certain sums to be withheld from payment when those sums are the subject of a 'good-faith dispute.'"[86]

If the TPP Act subjected amounts withheld because of a good-faith dispute to the hefty interest rate, it would be defeating the purpose of allowing owners to withhold legitimately disputed amounts. The TPP Act fairly balances the need to advance the twin goals of encouraging prompt payment for properly performed work, on the one hand, and allowing owners to withhold funds in the case of a good-faith dispute, on the other. It does this by exempting properly withheld funds from the 18 percent interest rate.

## IV.    Conclusion

This Court must predict how the Texas Supreme Court would interpret the TPP Act. Because the Texas Supreme Court has instructed courts interpreting statutes to look to the plain language of the text and interpret it in light of the statute as a whole, this Court concludes that the Texas Supreme Court would decline to follow the reasoning — or more precisely, the lack thereof — of the intermediate Texas appellate courts that have interpreted the TPP Act.  Instead, the Texas Supreme Court would hold that amounts withheld under the TPP Act because of a good-faith dispute are not subject to prejudgment interest rate at 18 percent.

---

[86] *Arco Const. Co. v. American Servs. Co.*, 2008 WL 2058214, at *6 (Tex. Ct. App. May 15, 2008) (mem. op.), *review granted, judgment vacated and appeal dismissed per stipulation* (Jan. 9, 2009) (pursuant to parties' settlement agreement).

This Court must therefore deny PetroSwift's summary judgment motion and hold a trial to determine whether the amounts withheld under the contract between DRP and PetroSwift were subject to a good-faith dispute. If the Court determines the amounts withheld were subject to a good-faith dispute, it will entertain argument regarding whether another interest rate applies. The Court will enter a separate order denying PetroSwift and the Debtor's cross-motions for summary judgment on this issue.